JORDAN *vs.* JORDAN *ad'x.*

Where the children of one deceased entered into an agreement, under seal, for a division of the estate, designating, in general terms, in what part of the land each one's portion was to be assigned, but referring to a future survey, plan, and division-deed for the completion of the partition ; and thereupon the parties entered each into his several portion thus designated, and continued in the quiet and exclusive possession more than thirty years, but no such survey, plan, or deed was ever made ; and afterwards a will was discovered and duly proved, by which their father had devised all the land to one of them in fee ; it was holden that, this possession by the others being founded in mistake, the law raised an implied promise in each of them to pay to the devisee a reasonable rent for the portion of land so occupied.

THIS was an action of *assumpsit* by *Thomas Jordan*, against the administratrix of the estate of his brother *Timothy Jordan*, for the use and occupation of a farm, from the year 1783 to *August* 1821 ; and was tried before the Chief Justice upon the pleas of *non assumpsit*, and the statute of limitations.

It appeared that the father of the plaintiff, being owner of the farm, made his will in 1761, and died seised in 1783, having devised the farm to the plaintiff in fee. The will was not discovered, nor was there any proof that its existence was known to any of the testators' children, until a short time before it was proved in the probate court, which was in *January* 1822. The defendant's intestate had occupied the farm as stated in the writ.

It was proved by the defendant that the plaintiff, with his brothers and sisters, in 1784 entered into an agreement under their hands and seals, reciting that their father had lately died intestate, and that they were desirous to have his estate divided among them without any formal administration ; and thereupon agreeing that the estate should be divided " as near as may be " according to the following plan." The part to be assigned to *Timothy* is then described, he paying to each of his sisters a certain sum of money ;—*Thomas*, the plaintiff, was to have a certain ten-acre field, to be afterwards surveyed ; and a portion of a swamp, " to be appraised by indifferent men according to the "goodness of it". Certain other tracts, distinctly described, were

assigned to the five daughters, " to be equally divided between " them according to quantity and quality with their brother *Thom-* " *as'* lot";—the portion of *John* was to be laid off, adjoining his other land, "as shall hereafter appear on the plan";—and to the same plan reference is made for the parts specifically assigned to the others ; and the residue of the real estate was to be equally divided among the other children. It was then agreed that the personal estate should be equally divided; that any dispute which might arise should be determined by arbitrators mutually chosen; and that after the division should be completed, a sufficient deed of partition should be mutually executed by all the parties. This deed of partition, however, was never executed ; but it appeared that each of the parties to the agreement, soon after it was made, entered into possession of that part of the estate therein assigned to him or her ; and had ever since continued to hold it in severalty, without interruption from any of the others.

The Chief Justice hereupon instructed the jury that this agreement amounted at least to a lease at will to each of the parties, from all the others, of the part specially assigned to each ; which, as there was no proof of its express determination, must be considered as continuing during the life of *Timothy*, the defendant's intestate ;—that as the agreement was under the hands and seals of the parties, it imported in itself a legal consideration ; and was not void in consequence of the ignorance of all concerned as to the existence of the will, nor on that ground, impeachable in this action ; and that as, by the agreement, no rent was to be paid for any of the lands occupied by the parties, it was not competent for the plaintiff to control or explain the agreement by parol evidence. He further instructed them that the law implied no promise, where the parties had entered into an express agreement ; and that even if parol evidence were admissible, they would judge whether there were any facts in the case from which a promise could be implied, no express engagement being pretended to have been made. A verdict was returned for the defendant ; subject to the opinion of the court upon the correctness of these instructions.

The cause was argued at an adjourned session of this court in *April* last, by *Daveis* for the plaintiff, and *N. Emery* for the defendant ; and being continued for advisement, the opinion of the court was delivered at the ensuing *November* term by

MELLEN C. J. This case is a peculiar one, and not similar to any of those which have been cited in the argument, various and multiplied as they are. The plaintiff and the deceased, and all their brothers and sisters, in every thing relating to this cause, and the agreement signed and sealed by them, and in all the facts to which it relates, and from which it originated, appear to have acted under a mistake as to their rights, but with perfect fairness and good faith. Under the circumstances which this cause presents, what are the legal principles to be applied in its decision ? Nothing appears to prevent the operation of the statute of limitations, as to all that part of the account which was of more than six years standing at the time of the commencement of the suit ; for whatever right of action the plaintiff had as to such part, it accrued more than six years before this action was commenced; although the plaintiff did not know it ; and this ignorance on his part cannot prevent the effect of the statute, unless in those cases where such ignorance is owing to the fraud or default of the debtor. *Brue v. Holbech Dougl.* 655. *Bishop v. Little 3 Greenl.* 405. As to the residue of the account, other grounds must be examined. Numerous cases shew that on a failure of consideration, the law implies a promise of payment or repayment of a sum of money, as the case may be; and the question in the present case is, whether the law raised a promise, on the part of the intestate, to pay for the use and occupation of the plaintiff's land. If so, this action is maintainable, on the same principle that a promise is implied by law to pay a sum of money, which by mistake was omitted on a settlement of accounts, although a receipt in full was given at the time of settlement. A variety of cases, similar in principle, might be cited, if necessary. The Judge instructed the jury that the agreement under the hands and seals of all the children of *Thomas Jordan*, the father, on which the defendant grounds his defence, amounted to a lease at will, at least to each of the chil-

dren, from all the other children, of the part of the estate which each was to have and hold ; and being an agreement under seal, and no rent being reserved, this express agreement excluded all implication.   We have carefully examined the agreement, and the instructions of the Judge to the jury, and have felt no little embarrassment in arriving at a conclusion satisfactory to our own minds.   The result however of our examination is, that the legal principles which govern our decision, are in unison with the evident equity and justice of the plaintiff's claim.   If we considered the agreement as a lease at will, and that each of the children entered under it, we should not be disposed to question the correctness of the Judge's conclusions, as to the effect thereby produced in relation to this action.   A careful examination of that instrument has satisfied us all, that it was only an incipient measure, adopted by the children as to the division of their father's estate.   Several other measures were contemplated; divisional lines were to be established ; proportions to be adjusted by appraisement of indifferent men; disputes, if any, to be settled by referees, and finally partition deeds to be made.   In fact, the agreement is no more nor less than a bond in the penal sum of one hundred pounds, to make and execute among themselves deeds of partition, according to the general grounds agreed upon, after all preliminary and incidental questions should have been settled, and the division completed.   There is no proof that such deeds have ever been executed, and this agreement or bond is now in as full force and virtue as it ever was.   In the preamble of the agreement, the parties say the estate shall be divided, as " near as may be, according to the following plan."   The contract with *Timothy* was on condition of his paying a certain sum to each of his sisters ; there is no proof it was ever paid.   The contract with *Thomas,* speaks of the appraisement of his part of the swamp " by indifferent men according to the goodness of it."   The contract with *Mary, Elizabeth, Sarah, Abigail* and *Ann,* provides that the part they were to have, was " to be equally divided between " them, according to quantity and quality, with their brother " *Thomas Jordan's* lot."   The contract with *John Jordan* and *Elizabeth* his wife, is that they shall have their part of said estate,

adjoining his land to the northward of the marsh, "as shall appear hereafter on the plan." We have no proof of any such plan. *John* and *Sarah Marr's* part was to be designated "as shall here- "after appear on the plan."—*Mary, Abigail* and *Ann's* parts were to be designated on the plan, "according to the goodness "and quantity of the land with their brother *Thomas*, and their two "other sisters." It is agreed that the residue of the estate "shall be equally divided between the other children." The closing provision relates to the future disposition of the personal estate. It is true that it appears by the report that each of the children, soon after the execution of the agreement, entered into possession of that part of the estate which, by said agreement, he or she was to have and hold in fee. But by the agreement itself it does not appear that any particular part was to be holden in severalty and in fee, until the contemplated deeds of division should have been made. Neither is there any provision, in the agreement, that either of the sons or daughters should enter into their respective parts, as therein described, before such partition deeds should have been executed. Their entry and possession, therefore, for aught appearing to the contrary, might have been, and undoubtedly was, by a mutual understanding and parol consent. But as all this was founded on mistake, the law raises a promise, on the part of the intestate, to pay the plaintiff for the use and occupation of that land, which, by the will, is now found to have been, at the time of the occupation, his property, though the intestate, and all concerned, supposed otherwise. This view of the cause avoids all technical objections and difficulties, removes out of the way what has been incorrectly supposed an express contract under seal, in virtue of which the land was occupied ; and thus opens the door of inquiry, and leaves room for the law to do perfect justice, by raising an implied promise in favor of the plaintiff, on the part of the intestate. We are, accordingly, all of opinion that the verdict must be set aside and a

*New trial granted.*